<u>UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK</u>

BYC, Inc.,

                                  Plaintiff,

v.

BROKEN YOLK, an unknown New York entity;
and SEAN McHUGH, an Individual,

                                  Defendants.

Case # 21-CV-6203-FPG

DECISION AND ORDER

## INTRODUCTION

Plaintiff BYC, Inc. ("Plaintiff" or "BYC") brings this trademark infringement action related to various trademarks used and registered by BYC, including, names, logos, and trade dress associated with the Broken Yolk Café located in San Diego, California, against Broken Yolk and Sean McHugh (collectively, "Defendants") for the use of the name Broken Yolk. ECF No. 1. On August 10, 2021, the Clerk of Court filed an entry of default against Defendants after they failed to appear or otherwise defend. ECF No. 13. Plaintiff now moves for default judgment against those Defendants. ECF No. 14. For the following reasons, Plaintiff's motion is DENIED.

## BACKGROUND

The following facts are taken from the Complaint, ECF No. 1. BYC is the owner and user of "all national common law rights to the name 'BROKEN YOLK'" and various registered trademarks related to BYC's restaurant services and merchandise. ECF No. 1 ¶ 11. BYC first began its operations as the Broken Yolk Café and currently has 33 locations of its breakfast and lunch franchises throughout California, Arizona, Texas, Illinois, Florida, Nevada, and Idaho. *Id.* ¶¶ 12-14. Currently, BYC owns various registered trademarks, including, for example, "BROKEN

YOLK CAFE," Registration No. 3,615,513, "BROKEN YOLK," Registration No. 4,111,776, and "BYC," Registration No. 4,889,497 (collectively, "Broken Yolk Marks"). *Id.* ¶ 11.

Plaintiff alleges that on or about September 2019, BYC discovered—through Defendants' website—that Defendants operate a restaurant in East Rochester, New York, under the name "BROKEN YOLK." *Id.* ¶ 25, 26. Plaintiff further alleges that the Defendants' menu is "nearly identical" to the Broken Yolk Café, in that it primarily focuses on American style breakfast foods. *Id.* ¶ 25.

Prior to filing this action, Plaintiff contacted Defendants to inform them of Plaintiff's rights in the Broken Yolk related marks and requested Defendants cease and desist from further infringing on such rights. *Id.* ¶ 27. Defendants, through an attorney, advised Plaintiff that they would change the name of the restaurant. Based on that representation, Plaintiff took no further action. *Id.* ¶ 28.

However, Plaintiff states that Defendants did not make such change, and on or about February 2, 2021,[1] Plaintiff sent another cease and desist letter to Defendants, who did not respond. *Id.* ¶ 29-31. Plaintiff asserts that, to date, Defendants have "failed to cease and desist their infringing conduct and continue to market and advertise their businesses and products under the 'BROKEN YOLK' name." *Id.* ¶ 32.

On September 28, 2021, the Court sent a letter to Plaintiff's counsel advising that Defendant Broken Yolk, the restaurant located at 165 W. Commercial Street East Rochester, New York, appears to be operating under the name, "The Yolk." The Court requested that Plaintiff advise the Court on its position regarding the matter and whether it wished to proceed with this

---

[1] Plaintiff advised that due to the impact of COVID-19 on their business, Plaintiff did not pursue litigation against Defendants a year earlier, in February 2020, when Plaintiff initially attempted to contact Defendants by email, without response. ECF No. 1 ¶ 30.

action.  On October 22, 2021, Plaintiff, recognizing that Defendants changed the name displayed at the restaurant, advised the Court that it wished to proceed with its motion for default judgment due to Defendants' social media pages, websites, and other online advertising and marketing, which still appear with the name "Broken Yolk."  ECF No. 17.

Plaintiff brings various claims: (1) trademark infringement under 15 U.S.C. § 1051 et seq.; (2) false designation of origin under 15 U.S.C. § 1125(a); (3) unfair competition under California and New York state and common laws; and (4) trademark dilution under 15 U.S.C. § 1125(c).

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth the procedure for obtaining a default judgment.  First, the plaintiff must have secured an entry of default from the clerk, which requires a showing, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend" itself in the action.  Fed. R Civ. P. 55(a).  Once the plaintiff has obtained an entry of default, and if his claim against the defendant is not "for a sum certain," the plaintiff "must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(1)-(2).

The clerk's entry of default does not mean that default judgment is automatically warranted.  *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam).  Instead, "the court may, on [the plaintiff's] motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true."  *Id.*  If liability is established, the Court must then determine the proper amount of damages, which requires evidentiary support.  *See id.* at 189 ("[A] party's default . . . is not considered an admission of damages." (quotation omitted)).

Ultimately, "[t]he decision whether to enter default judgment is committed to the district court's discretion."  *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015).

## DISCUSSION

### I.      Liability

The Court first evaluates whether Plaintiff's allegations, taken as true, establish liability of Defendants, Broken Yolk and McHugh.  *See Bricklayers*, 779 F.3d at 187.

#### A.      Trademark Infringement

To succeed in a suit for trademark infringement, a plaintiff must "prove that its mark is entitled to protection and, even more important, that the defendant's use of its own mark will likely cause confusion with plaintiff's mark."  *Star Industries, Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 381 (2d Cir. 2005) (quoting *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1074 (2d Cir. 1993)) (internal quotation marks omitted).  "Likelihood of confusion includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection, or identification."  *Guinness United Distillers & Vintners B.V. v. Anheuser-Bush, Inc.*, 64 U.S.P.Q.2d 1039, 1041 (S.D.N.Y. 2002) (citations omitted).  "In order to be confused, a consumer need not believe that the owner of the mark actually produced the item and placed it on the market.  The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement."  *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204-05 (2d Cir. 1979) (internal citations omitted).

To determine whether there is a likelihood of confusion, the Court must apply the eight-factor test introduced in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961).  Those factors are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge

the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.  This analysis is not mechanical, but focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused.  *Star Industries*, 412 F.3d at 384.

As an initial matter, the Lanham Act "provides that a mark registered by its owner shall be *prima facie* evidence of the registrant's exclusive right to use the mark in commerce on the product." *Gruner + Jahr*, 991 F.2d at 1076.  Therefore, Plaintiff's registration demonstrates this exclusive right to use the mark.  However, Plaintiff has not provided facts sufficient to show that the likelihood of confusion factors will balance in Plaintiff's favor.  The Court turns to those factors.

The first factor the Court considers is the strength of Plaintiff's mark.  "The strength of a mark is its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir. 1996) (internal quotations omitted).  Plaintiff's mark is registered and so it is presumptively distinctive under the *Polaroid* analysis.  *See Classic Liquor Imps., Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 442 (S.D.N.Y. 2016).  However, Plaintiff provides no allegation as to the marks' distinctiveness, secondary meaning, or commercial strength.  Thus, this factor only slightly favors Plaintiff.

Second, in evaluating the similarity of the marks, the court considers the "overall impression on a consumer, considering the context in which the marks are displayed and the totality of favors that could cause confusion among prospective [customers]." *Codename Enters.,*

*Inc. v. Fremantlemedia N. Am., Inc.*, No. 16 Civ. 1267 (AT) (SN), 2018 WL 3407709, at *8 (S.D.N.Y. Jan. 12, 2018) (internal quotation marks omitted). Plaintiff alleges that it has operated the Broken Yolk Café since 1979 and is in the business of selling mainly American style breakfast foods directly to consumers. Plaintiff has restaurants in California, Arizona, Texas, Illinois, Florida, Nevada, and Idaho. Defendants own and operate a restaurant in Rochester, New York—previously operating under the name "Broken Yolk" and now operating under the name "The Yolk." Defendants are also in the business of selling mainly American style breakfast foods directly to consumers. A similarity in name and services offered typically would tip this factor in Plaintiff's favor. *See, e.g.*, *Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C.*, 182 F.3d 133, 140 (2d Cir. 1999) (similarity weighed in favor of likelihood of confusion where both financial investment firms used the words "Groups" and "Morningside," and offered nearly identical services).

Plaintiff maintains that although the physical name of Defendants' restaurant has changed, the social media pages, websites, and other online material still reference "Broken Yolk." ECF No. 17. While this appears to be true, the Court too has reviewed internet searches and it appears that the only social media or website used by Defendants is Facebook, which, appears to have not been updated since April of 2020. *See* Facebook, Broken Yolk, https://www.facebook.com/pg/ERBrokenYolk/posts/?ref=page_internal (last accessed Oct. 22, 2021). Thus, the Court acknowledges that Defendants do not appear to be actively promoting themselves as "Broken Yolk."

Moreover, "marks that are 'sufficiently similar' but used in greatly different contexts and/or in 'wholly different visual displays' are not at risk of confusion." *E.A. Sween Co., Inc. v. A&M Deli Express, Inc.*, No. 17 CV 2514 (RJD) (RML), 2018 WL 1283682, at *3 (E.D.N.Y. Mar.

6

9, 2018), *report and recommendation adopted*, 2018 WL 4344951 (E.D.N.Y. Sept. 11, 2018), *aff'd*, 787 F. App'x 780 (2d Cir. 2019). Here, Plaintiff makes no allegation that the marks appear similar in font, design, color, logo, or any other identifiable trait. Overall, while the original name of Defendant restaurant, Broken Yolk, and services offered are very similar, this factor does not weigh heavily in Plaintiff's favor given the name change and lack of other similarities.

Third, the proximity inquiry asks to what extent the two parties compete with each other. *See Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 39 (2d Cir. 2016). In assessing product proximity courts look at "the nature of the products themselves and the structure of the relevant market." *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 967 (2d Cir. 1981). The proximity factor has two elements: market proximity and geographic proximity. *Brennan's, Inc. v. Brennan's Rest., LLC*, 360 F.3d 125, 134 (2d Cir. 2004). "Market proximity asks whether the two products are in related areas of commerce and geographic proximity looks to the geographic separation of the products." *Id.* It is clear that both Plaintiff and Defendants are in the same business in that they both operate restaurants which primarily sell American style breakfast foods. Therefore, they have close market proximity. However, Plaintiff does not operate any business in Rochester, New York or, for that matter, in any part of New York state, nor does Plaintiff allege that that it markets to consumers in New York. The geographic remoteness is critical in this case. In the restaurant industry, physical separation seems to be significant to the inquiry into consumer confusion. Indeed, Plaintiff has a particularly high hurdle to sufficiently demonstrate that its restaurants in California, Arizona, Texas, Illinois, Florida, Nevada, and Idaho, compete for the same customers as Defendants' Rochester, New York, location. Thus, this factor weighs against a finding of confusion. *See id.* at 134-35 (finding that the substantial distance between two

restaurants, coupled with the fact that plaintiff never had an establishment in defendant's location, meant it was unlikely that consumers would be confused).

The fourth factor "concerns the likelihood that [a] senior user that is not in direct competition with a junior user at the time a suit is brought will later expand the scope of its business so as to enter the junior user's market." *U.S. Polo Ass'n Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 531 (S.D.N.Y. 2011). To demonstrate this "bridging the gap" factor, a plaintiff must demonstrate "that they intend to enter the market of defendants and that prospective customers are aware of this intention." *Strange Music, Inc. v. Strange Music, Inc.*, 326 F. Supp. 2d 481, 493 (S.D.N.Y. 2004). Plaintiff has not alleged it intends to enter Defendants' market—specifically, the Rochester, New York area—nor has Plaintiff alleged that it intends to enter any part of New York state. Therefore, this factor weighs against the likelihood of confusion. *See Deep Foods Inc. v. Deep Foods Inc.*, 419 F. Supp. 3d 569, 581 (W.D.N.Y. 2019) (bridging the gap factor weighed against likelihood of confusion where plaintiff did not assert an intention to enter defendants' market); *see also Boston Rest. Assocs. v. Ward*, No. 17 CV 5557 (FB) (RML), 2018 WL 5456669, at *5 (E.D.N.Y. Aug. 1, 2018) (same).

Fifth, the Court considers whether there is evidence of actual confusion. Actual confusion is typically shown through consumer surveys, anecdotal evidence, empirical studies, or expert testimony. *Classic Liquor*, 201 F. Supp. 3d at 448. Plaintiff conclusively asserts that consumer confusion is likely to occur but offers no allegation that such confusion has, in fact, occurred. Nor does Plaintiff provide the Court with any survey or other form of evidence to support the claim that there is likely consumer confusion as a result of Defendants' use. Thus, this factor weighs against a finding of confusion. *See Deep Foods*, 419 F. Supp. 3d at 582 (evidence of actual confusion weighed against likelihood of confusion where plaintiff conclusively alleged that the

defendants' use was likely to cause confusion without alleging that consumer confusion actually occurred or offering any details concerning the alleged confusion).

The sixth factor is whether the junior user acted in bad faith in adopting the mark.  This generally refers to an attempt to "exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' [products or services]."  *Star Industries*, 412 F.3d at 388.  To show bad faith, a plaintiff must show that "defendant had knowledge—be it actual or constructive—of the plaintiff's 'prior similar mark.'"  *Kohler Co. v. Bold Int'l FZCO*, 422 F. Supp. 3d 681, 726 (E.D.N.Y. 2018).  Here, Plaintiff alleges that Defendants' failure to cease and desist the use of Broken Yolk and the failure to respond to such communications demonstrates Defendants' bad faith.  However, "a defendant's refusal to abandon a mark in the face of a cease-and-desist letter cannot demonstrate bad faith standing alone."  *O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 525 (S.D.N.Y. 2008).  In further support of the bad faith claim, Plaintiff states that prior to filing this litigation, Plaintiff was in contact with Defendants' attorney who advised that Defendants agreed to change the name.  Typically, where parties are warned of infringement prior to litigation, courts find that such conduct tips the bad faith factor in plaintiff's favor.  *See, e.g.*, *Sola Franchise Corp. v. Solo Salon Studios, Inc.*, No.14-CV-0946, 2015 WL 1299259, at *11 (E.D.N.Y. Mar. 23, 2015) (default weighed in favor of bad faith where there was evidence that "[p]laintiffs' representatives spoke to [d]efendant's owner twice prior to [the] litigation, warning him that [d]efendant was infringing on [p]laintiff's mark" and that "[d]efendant refused to change the name of the salon or to provide [p]laintiff with an address to mail a cease and desist letter").  Here, however, Defendants ultimately changed their name and the physical restaurant currently displays the name "The Yolk."  Therefore, this factor is neutral.

Seventh, the Court must consider whether the "senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Codename*, 2018 WL 3407709, at *12. Plaintiff does not allege any facts regarding the quality of Defendants' restaurant or the impact that has had on Plaintiff's reputation. Rather, Plaintiff makes a conclusive statement that Defendants used "Broken Yolk" to "trade off of BYC's reputation and goodwill." ECF No. 1 ¶ 33. This is simply insufficient to be deemed a factor in Plaintiff's favor. Therefore, it is neutral in this analysis.

Finally, the eighth factor is the sophistication of the consumer group. Again, Plaintiff does not allege any facts regarding the sophistication of its consumers. This factor, therefore, is neutral in the likelihood of confusion analysis.

Considering the *Polaroid* factors and the circumstances here, the Court does not find that Plaintiff's allegations are sufficient to establish Defendants' liability. Indeed, there are significant gaps in the evidence. While the Second Circuit has described "strength, similarity, and proximity. . . as the most important *Polaroid* factors in most cases," *Akiro LLC v. House of Cheatham, Inc.*, 946 F. Supp. 2d 324, 341 (S.D.N.Y. May 17, 2013) (citation omitted), only one of those three factors weighs in favor of Plaintiff here. Further, none of the remaining factors weigh heavily in favor of Plaintiff; rather, all weigh either against a finding of confusion or are neutral. Accordingly, the Court denies Plaintiff's motion for default judgment with respect to the trademark infringement claim.

### B. False Designation of Origin

To state a false designation of origin claim under 15 U.S.C. § 1225(a), Plaintiff must allege that (1) goods or services are involved, (2) interstate commerce is affected, and (3) there is a false designation of origin or a false description or representation with respect to those goods or services

10

in commerce. *Sun Trading Distributing Co., Inc. v. Evidence Music, Inc.*, 980 F. Supp. 722, 727 (S.D.N.Y. 1997). False designation of origin "occurs when the wrongdoer attempts to sell its product with a false designation that suggests the product originated from the plaintiff." *Id*. At bottom, like a claim for infringement, a plaintiff must establish that it has a valid mark entitled to protection and that the defendants' use of it is likely to cause confusion. *See Nat'l Basketball Ass'n v. Sports Team Analysis & Tracking Sys., Inc.*, 939 F. Supp. 1071, 1111 (S.D.N.Y. 1996) (affirmed in relevant part by *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997)) (quoting *Cadbury Beverages*, 73 F.3d at 477). Plaintiff's claim for false designation of origin fails for the same reasons Plaintiff's infringement claim fails to establish liability due to failure to show likelihood of confusion.

### C.     Unfair Competition

Plaintiff also brings claims for unfair competition pursuant to New York state and common law and California state and common law.

"To prevail on an unfair competition claim under New York law, 'a plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief' as well as make a showing of 'bad faith.'" *Lyons P'ship, L.P. v. D & L Amusement & Entm't*, 702 F. Supp. 2d 104, 115 (E.D.N.Y. 2010) (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir. 1995)). "Courts employ substantially similar standards when analyzing claims for trademark infringement . . . [and] unfair competition under New York common law." *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. 2014). Accordingly, for the reasons set forth above, Plaintiff fails to establish liability on this ground.

Likewise, the likelihood of confusion test is also the basis for finding whether use of a similar business name constitutes unfair competition under California law. *Century 21 Real Estate*

*Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). Indeed, there is no infringement under California law where there is no likelihood of confusion. *Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 791 (9th Cir. 1981). For the reasons set forth above, Plaintiff has failed to allege likelihood of confusion and therefore, Plaintiff fails to establish liability on this ground.

### D. Trademark Dilution

Finally, Plaintiff brings a claim for trademark dilution pursuant to 15 U.S.C. § 1125(c). Under federal law, an owner of a "famous, distinctive mark" is entitled to an "injunction against the user of a mark that is 'likely to cause dilution' of the famous mark." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 477 F.3d 765, 766 (2d Cir. 2007) (per curiam) (quoting 15 U.S.C. § 1125(c)(1)). Federal dilution is actionable in two situations: (1) dilution by "blurring" and (2) dilution by "tarnishment." 15 U.S.C. § 1125(c).

To sustain such a claim in the Second Circuit, a plaintiff must show that the senior mark possesses a "significant degree of *inherent* distinctiveness" and, to qualify as famous, "a high degree of . . . *acquired* distinctiveness." *TCPIP Holding Co. v. Haar Comm., Inc.*, 244 F.3d 88, 97-98 (2d Cir. 2001). "Although a plaintiff must show a preponderance of evidence on each element of a claimed violation of the [Federal Trademark Dilution Act] in order to ultimately prevail on such a claim, the element of fame is the key ingredient." *Savin Corp. v. Savin Group*, 391 F.3d 439, 449 (2d Cir. 2004) (internal citation omitted). "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2). In determining whether a mark possesses such a degree of distinctiveness, the court may consider:

> (i) The duration, extent and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

>   (ii)   The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
>   (iii)   The extent of actual recognition of the mark.
>
>   (iv)   Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

*Id.*

The Second Circuit in *Savin* determined that there was sufficient evidence to show the plaintiff's mark was famous for purposes of summary judgment where plaintiff asserted that it spent over $20 million on advertising, achieved revenues of $675 million, regularly featured its products and services in print advertisements, trade magazines, and tradeshow promotions, including in well known, national magazines such as, *Newsweek*, *Time*, and *Business Week*. *Savin*, 391 F.3d at 450. Similarly, in *George Nelson Foundation v. Modernica, Inc.*, the court determined that plaintiff sufficiently alleged the marks—GEORGE NELSON or NELSON—were famous where the complaint alleged that the marks were used for more than 60 years and copies of plaintiff's website showing images of the products rendering the marks appeared on the cover of *Life*, *World's Fair*, and in *American National Exhibition* in Moscow. 12 F. Supp. 3d 635, 649 (S.D.N.Y. 2014). The complaint in *George Nelson*, also alleged fame through numerous awards recognizing George Nelson designs and the numerous books about the designs. *Id.* The court highlighted that publications in national magazines supported a showing that the marks were famous. *Id.*

However, in *TCPIP*, the court found that plaintiffs failed to demonstrate that their mark was famous. Specifically, the court found that allegations of $280 million in revenue and "tens of thousands" of dollars spent in advertising was insufficient to show fame because there was no

evidence of "how many millions, when expended, or how effectively" and no press accounts, consumer surveys, or other evidence of fame. *TCPIP*, 244 F.3d at 98-99.

Here, Plaintiff indicates it has been in business since 1979 and has continuously used "Broken Yolk" marks. ECF No. 1 ¶ 12. Plaintiff has thirty-three locations throughout California, Arizona, Texas, Illinois, Florida, Nevada, and Idaho. *Id.* ¶ 13. Plaintiff conclusively states that it "has spent significant time and expense developing extensive and associated goodwill in its trademarks and the BROKEN YOLK Marks within the industry and its clientele." *Id.* ¶ 17. Plaintiff further alleges that "the BROKEN YOLK Marks [] have played a significant role in the restaurant's success," that it "markets and advertises its services and products in print, online, and through other media" and as a result, the name is "readily recognized in the industry, among the consuming public, and distinguished from other restaurants by the 'BROKEN YOLK' name and the BROKEN YOLK Marks." *Id.* ¶ 19, 20.

In accordance with decisions within this Circuit, the Court finds that Plaintiff has not sufficiently demonstrated the "fame" of its marks. Plaintiff provides no statement of the expense on advertising, forums of its ads—specifically, whether the ads were local or national—or any other evidence from which this Court could discern the "fame" of Plaintiff's mark. Therefore, Defendants cannot be found liable for this claim.

Because Plaintiff has not sufficiently alleged Defendants' liability on each of its claims, it is not entitled to damages here. *Bricklayers*, 779 F.3d at 189.

## CONCLUSION

For the reasons set forth above, Defendants' motion for default judgment, ECF No. 14, is DENIED and the Complaint is DISMISSED without prejudice. *See, e.g. Payamps v. M & M Convenience Deli & Grocery Corp.* 2018 WL 3742696, at *9 (E.D.N.Y. May 18, 2018)

(recommending default judgment be denied and cause of action dismissed without prejudice), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 156601, at *1 (Sept. 12, 2018); *Siemieniewicz v. CAZ Contracting Corp.*, No. 11-CV-704, 2012 WL 5183374, at *9 (E.D.N.Y. Sept. 21, 2012) (denying default judgment and recommending dismissal without prejudice), *report and recommendation adopted as modified*, No. 11-CV-704, 2012 WL 5183000 (E.D.N.Y. Oct. 18, 2012) (dismissing complaint with leave to amend). The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: November 2, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York