UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────

BYC, Inc.,

                                        Plaintiff,

                                                                                                Case # 21-CV-6203-FPG

v.

                                                                                               DECISION AND ORDER

BROKEN YOLK, an unknown New York entity;
and SEAN McHUGH, an Individual,

                                       Defendants.
───────────────────────────────────

## INTRODUCTION

On November 2, 2021, the Court denied a motion for default judgment filed by Plaintiff BYC, Inc. ("Plaintiff" or "BYC") against Broken Yolk and Sean McHugh (collectively, "Defendants"). *See BYC, Inc. v. Broken Yolk*, No. 21-CV-6203, 2021 WL 5074720 (W.D.N.Y. Nov. 2, 2021). Concluding that Plaintiff had not "sufficiently alleged Defendants' liability" on any of its claims, the Court also dismissed the complaint without prejudice. *Id.* at *7. Plaintiff has since filed an amended complaint, ECF No. 25, obtained an entry of default against Defendants, ECF No. 29, and moved for a default judgment. ECF No. 30. Defendants did not respond. For the following reasons, Plaintiff's motion is DENIED and the amended complaint is DISMISSED WITH PREJUDICE.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth the procedure for obtaining a default judgment. First, the plaintiff must have secured an entry of default from the clerk, which requires a showing, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend" itself in the action. Fed. R Civ. P. 55(a). Once the plaintiff has obtained an entry of default, and

if his claim against the defendant is not "for a sum certain," the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(1)-(2).

The clerk's entry of default does not mean that default judgment is automatically warranted. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam). Instead, "the court may, on [the plaintiff's] motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Id.* If liability is established, the Court must then determine the proper amount of damages, which requires evidentiary support. *See id.* at 189 ("[A] party's default . . . is not considered an admission of damages." (quotation omitted)). Ultimately, "[t]he decision whether to enter default judgment is committed to the district court's discretion." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015).

## DISCUSSION

In its original complaint, Plaintiff brought claims for (1) trademark infringement, (2) false designation of origin, (3) statutory unfair competition, (4) common law unfair competition, and (5) trademark dilution. ECF No. 1 at 6-9. Defendants did not appear, and Plaintiff moved for default judgment. ECF No. 14.

In its decision denying Plaintiff's motion, the Court analyzed the sufficiency of Plaintiff's complaint with respect to each claim and found the complaint fatally deficient. As to trademark infringement, the Court applied the eight-factor *Polaroid* test and concluded that Plaintiff had failed to sufficiently allege a likelihood of confusion. *See BYC, Inc.*, 2021 WL 5074720, at *2-5; *see also Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961). Plaintiff's failure to sufficiently allege a likelihood of confusion barred not only its trademark infringement claim, but also its claims for false designation of origin, statutory unfair competition, and common law

2

unfair competition. *See id.* at *5-6. As to Plaintiff's final claim, trademark dilution, the Court concluded that Plaintiff had failed to sufficiently allege "the 'fame' of its marks." *Id.* at *7. The Court dismissed Plaintiff's complaint without prejudice so as to give Plaintiff an opportunity to cure the defects in its pleading.

Having filed an amended complaint, Plaintiff again moves for a default judgment. ECF No. 30. After review of Plaintiff's amended complaint, and largely for the reasons set forth in its prior decision, the Court denies Plaintiff's motion and dismisses the amended complaint with prejudice.

The Court presumes familiarity with Plaintiff's allegations and the Court's prior reasoning, so the Court will not fully recapitulate its analysis. It suffices to highlight the ways in which Plaintiff's amended complaint has failed to cure the defects contained in the original complaint. The Court begins with the claim for trademark infringement.

To succeed on a claim for trademark infringement, a plaintiff must "prove that its mark is entitled to protection and, even more important, that the defendant's use of its own mark will likely cause confusion with plaintiff's mark." *Star Industries, Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 381 (2d Cir. 2005) (quoting *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1074 (2d Cir. 1993)) (internal quotation marks omitted). "Likelihood of confusion includes confusion of any kind, including confusion as to source, sponsorship, affiliation, connection, or identification." *Guinness United Distillers & Vintners B.V. v. Anheuser-Bush, Inc.*, 64 U.S.P.Q.2d 1039, 1041 (S.D.N.Y. 2002) (citations omitted). "In order to be confused, a consumer need not believe that the owner of the mark actually produced the item and placed it on the market. The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark

satisfies the confusion requirement." *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204-05 (2d Cir. 1979) (internal citations omitted).

To determine whether there is a likelihood of confusion, the Court must apply the eight-factor *Polaroid* test. Those factors are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961). This analysis is not mechanical, but focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused. *Star Indus.*, 412 F.3d at 384.

In its prior decision, the Court found that the Plaintiff's allegations were insufficient to show a likelihood of confusion under these factors. *See BYC, Inc.*, 2021 WL 5074720, at *2-5. In particular, the Court concluded that the complaint failed to adequately allege the third factor—proximity of the products and their competitiveness with one another. This factor is considered one of the most important. *See Akiro LLC v. House of Cheatham, Inc.*, 946 F. Supp. 2d 324, 341 (S.D.N.Y. 2013). "The proximity inquiry asks to what extent the two products compete with each other," and considers both "market proximity and geographic proximity." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 134 (2d Cir. 2004). Those elements "seek to determine whether the two products have an overlapping client base that creates a potential for confusion." *Id.* The Court found it significant that the complaint failed to allege that Plaintiff's restaurants and Defendants' restaurant were in geographic proximity:

> Plaintiff does not operate any business in Rochester, New York or, for that matter, in any part of New York state, nor does Plaintiff allege that that it markets to

4

> consumers in New York. The geographic remoteness is critical in this case. In the restaurant industry, physical separation seems to be significant to the inquiry into consumer confusion. Indeed, Plaintiff has a particularly high hurdle to sufficiently demonstrate that its restaurants in California, Arizona, Texas, Illinois, Florida, Nevada, and Idaho, compete for the same customers as Defendants' Rochester, New York, location.

*BYC, Inc.*, 2021 WL 5074720, at *4.

In reaching this conclusion, the Court relied on the Second Circuit's decision in *Brennan's, Inc. v. Brennan's Restaurant, L.L.C.*, 360 F.3d 125 (2d Cir. 2004). In that case, the Second Circuit found no likelihood of confusion between a New Orleans restaurant named "Brennan's," which held the trademark, and a New York City restaurant named "Terrance Brennan's Seafood & Chop House." *See Brennan's*, 360 F.3d at 128. The court found the "geographic remoteness" between the restaurants "critical" to its analysis. *Id.* at 134; *see also id.* at 135 ("[S]ubstantial geographic separation remains a significant indicator that the likelihood of confusion is slight."). The Second Circuit reasoned that "[i]n the restaurant industry, . . . physical separation seems particularly significant to the inquiry into consumer confusion." *Brennan's*, 360 F.3d at 134; *see also id.* ("Even in this age of rapid communication and travel, plaintiff faces a high hurdle to demonstrate that a single restaurant in New Orleans and a single restaurant in New York City compete for the same customers."). Consistent with the reasoning in *Brennan's*, this Court concluded that the significant distance between Plaintiff's geographic market—California, Arizona, Florida, Texas, Nevada, Illinois, and Idaho—and Defendants'—a single restaurant in East Rochester, New York—"weigh[ed] against a finding of confusion." *BYC, Inc.*, 2021 WL 5074720, at *4. Indeed, Plaintiff failed to allege that it marketed to New York consumers or had any intent to enter the New York market. *See id.*

The amended complaint does not cure the original complaint's defects with respect to the third factor. Plaintiff concedes that its restaurants are not located in or near New York, but are

5

only located in "California, Arizona, Texas, Illinois, Florida, Nevada, and Idaho." ECF No. 25 ¶ 28. Plaintiff vaguely alleges that it intends to open new restaurants, but it does not allege that it ever intends to expand its market presence into Rochester, New York State, or the Northeastern United States more broadly. *See id.* ¶¶ 38, 75, 82. Plaintiff fails to allege that its advertising or marketing is directed at Rochester or New York State consumers. *See id.* ¶¶ 31, 32, 34, 35, 37. Plaintiff fails to allege any nonconclusory facts showing a strong, nationwide reputation. *See id.* ¶¶ 2, 32-37; *see also Brennan's, Inc.*, 360 F.3d at 134 ("[A] geographically remote mark may [] gain protection in a distant market, at least where there is extensive advertising or evidence of strong reputation in the distant market."). And in setting forth the elements of its trademark infringement claim, Plaintiff does not allege any facts suggestive of geographic proximity. *See* ECF No. 25 at 10-11. Accordingly, the third *Polaroid* factor continues to weigh strongly against Plaintiff. *See BYC, Inc.*, 2021 WL 5074720, at *4.

Furthermore, the omission of any allegation that Plaintiff provides, markets, or advertises its goods or services in Rochester, or ever intends to do so, bears on other *Polaroid* factors. It undercuts the strength of Plaintiff's marks—the first *Polaroid* factor—insofar as there is nothing to show that Plaintiff's marks "ha[ve] achieved distinctiveness" in the relevant market, *i.e.*, Rochester or New York State. *See Brennan's, Inc.*, 360 F.3d at 132 (concluding that marketing materials for "Brennan's New Orleans," which discussed the restaurant "in the context of the City of New Orleans," did not prove "acquired distinctiveness in the relevant market," since they "in no way demonstrate[d] that potential diners *in New York City* who find the word Brennan's on a restaurant awning will have any reason to think the restaurant is connected with Brennan's New Orleans"); *see also Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1030 (2d Cir. 1989) ("[T]he fact that a mark has selling power in a limited geographical or

commercial area does not endow it with a secondary meaning for the public generally."). The omission concerning geographical proximity also weighs significantly against Plaintiff on the fourth factor—"whether the plaintiff is likely to enter defendant's area of business or whether the average consumer would perceive that possibility as likely." *24 Hour Fitness, USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 447 F. Supp. 2d 266, 277 (S.D.N.Y. 2006).

Instead of curing this significant pleading defect, Plaintiff chiefly focused its amendments on further highlighting Defendants' failure to make good on certain pre-litigation representations that they would remove infringing content from the restaurant's social media pages. *See, e.g.*, ECF No. 25 ¶¶ 8-17, 84-89. To Plaintiff, Defendants' conduct supports a finding of bad faith under the sixth factor, which the Court had previously found "neutral." *BYC, Inc.*, 2021 WL 5074720, at *4.

"If a defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and good will and any confusion between his and the senior user's product, the court may find bad faith, and therefore, a likelihood of confusion." *24 Hour Fitness*, 447 F. Supp. 2d at 282 (internal quotation marks omitted). Plaintiff asserts that Defendants' persistence in making use of the "Broken Yolk" name, despite being on notice of the alleged infringement and promising to "remove the infringing content from its social media," permits an inference of bad faith. ECF No. 25 ¶¶ 86, 87.

Viewing the allegations in the light most favorable to Plaintiff, the Court can accept that "such persistence [] contribute[s] to a finding of bad faith," *24 Hour Fitness*, 447 F. Supp. 2d at 283-84 (collecting cases), but it is hardly egregious. There is no allegation that Defendants initially adopted the name "Broken Yolk" for the purpose of capitalizing on Plaintiff's reputation. Moreover, it is undisputed that Defendants "changed the name displayed at the physical restaurant" to "The Yolk" after receiving notice from Plaintiff. *See* ECF No. 17 at 1; ECF No. 25 ¶ 40.

Defendants' "persistence" consists of its refusal to change the name listed on its Facebook page, along with other related websites like Yelp and TripAdvisor, despite their assurances to Plaintiff. *See* ECF No. 25-7.  Even if the Court were to accept that Defendants' conduct was, in this respect, evasive and deceitful, Plaintiff simply fails to allege that Defendants "acted in bad faith in the sense of deceiving consumers about the relationship" between their restaurant and Plaintiff's restaurants.  *N.Y. Stock Exch., Inc. v. New York, New York Hotel, LLC*, 293 F.3d 550, 556 (2d Cir. 2002).  Therefore, while the new allegations may suffice to nudge the sixth factor in Plaintiff's favor, those allegations are not so weighty as to materially alter the Court's analysis of the *Polaroid* factors.

Similarly, Plaintiff has added allegations relevant to the eighth factor: the sophistication of the consumer group.  Previously, the Court had concluded that this factor was "neutral" because Plaintiff did not "allege any facts regarding the sophistication of its consumers."  *BYC, Inc.*, 2021 WL 5074720, at *5.  Plaintiff now alleges that "[c]ustomers at breakfast restaurants are typically impulse buyers" who "make decisions on where to eat quickly," so they are not "as discerning or sophisticated as a consumer of an automobile or similar products."  ECF No. 25 ¶ 83.  In general, if a "senior user's potential consumers . . . do not have a sophisticated knowledge of the overall market, the likelihood is higher that similarity of trademarks may lead them to believe that a junior user's activities are affiliated with those of the senior user."  *Reply All Corp. v. Gimlet Media, LLC*, 843 F. App'x 392, 399 (2d Cir. 2021) (summary order).  Assuming the truth of Plaintiff's new allegation, the Court accepts that this factor now weighs in Plaintiff's favor.

Nevertheless, looking at this factor in conjunction with all of the factors as a whole, the Court concludes that Plaintiff's amended complaint does not cure those defects in its original complaint that led the Court to conclude that Plaintiff had failed to sufficiently allege a likelihood

of confusion. *See BYC, Inc.*, 2021 WL 5074720, at *2-5. In reaching this conclusion, the Court is guided by the Second Circuit's observation that, in the restaurant industry, "physical separation" is "particularly significant to the inquiry into consumer confusion." *Brennan's*, 360 F.3d at 134. Although Plaintiff has bolstered its allegations in several respects, it has not overcome those factors that weigh decisively against it given the geographic distance between the parties' restaurants and consumer markets.

Therefore, for the reasons discussed in the Court's prior decision and herein, Plaintiff's amended complaint fails to sufficiently allege a likelihood of confusion, and its trademark infringement claim fails. As a result, Plaintiff's claims for false designation of origin, statutory and common law unfair competition—all of which are premised on the existence of a likelihood of confusion—also fail. *See BYC, Inc.*, 2021 WL 5074720, at *5-6.

That leaves Plaintiff's claim for trademark dilution. Under federal law, an owner of a "famous, distinctive mark" is entitled to an "injunction against the user of a mark that is 'likely to cause dilution' of the famous mark." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 477 F.3d 765, 766 (2d Cir. 2007) (per curiam) (quoting 15 U.S.C. § 1125(c)(1)). Federal dilution is actionable in two situations: (1) dilution by "blurring" and (2) dilution by "tarnishment." 15 U.S.C. § 1125(c).

To sustain such a claim in the Second Circuit, a plaintiff must show that the senior mark possesses a "significant degree of *inherent* distinctiveness" and, to qualify as famous, "a high degree of . . . *acquired* distinctiveness." *TCPIP Holding Co. v. Haar Comm., Inc.*, 244 F.3d 88, 97-98 (2d Cir. 2001). "Although a plaintiff must show a preponderance of evidence on each element of a claimed violation of the [Federal Trademark Dilution Act] in order to ultimately prevail on such a claim, the element of fame is the key ingredient." *Savin Corp. v. Savin Group*,

9

391 F.3d 439, 449 (2d Cir. 2004) (internal citation omitted).  "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2).  In determining whether a mark possesses such a degree of distinctiveness, the court may consider:

> (i) The duration, extent and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii) The extent of actual recognition of the mark.
>
> (iv) Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

*Id.*

Here, Plaintiff alleges that it operates an "extremely successful restaurant" chain.  ECF No. 1 ¶ 2.  The business has been featured on the "wildly popular *Man v. Food* series," which airs on the *Travel Channel*.  *Id.*  There are thirty-four locations operating in California, Arizona, Texas, Illinois, Florida, Nevada, and Idaho.  *Id.* ¶ 28.  Plaintiff alleges that it has "spent significant time and expense on marketing and developing extensive and associated goodwill" within the industry and among its clientele, *id.* ¶ 32, and that its marks have "become widely recognized by the consuming public of the United States as a designation of the source of products and services provided by [Plaintiff]."  *Id.* ¶ 110.

As to the trademark dilution claim, Plaintiff's amended complaint suffers from the same defect as its original complaint: Plaintiff does not sufficiently allege a famous mark.  *See BYC, Inc.*, 2021 WL 5074720, at *6-7.  Fame is analyzed by reference to "the general marketplace," not a "niche market."  *Savin Corp.*, 391 F.3d at 450 n.6.  For that reason, "fame limited to a particular

channel of trade, segment of industry or service, or geographic region is not sufficient to meet that standard." *Id.*

In this case, Plaintiff offers insufficient nonconclusory allegations to establish the fame of its marks. The mere allegation that Plaintiff has engaged in "extensive" marketing efforts and that its marks are "widely recognized" is insufficient to state a claim. *See TCPIP Holding*, 244 F.3d at 99 (declining to consider as evidence "unsubstantiated conclusory phrases like 'the mark *The Children's Place* has been widely recognized by American consumers'" (emphasis added)). Plaintiff does allege that it has made "extensive advertising, promotion, and marketing" efforts over the years, ECF No. 25 ¶ 110, but it does not attempt to describe those efforts to any reasonable degree that would allow the Court to discern the extent of public recognition of the marks. *See TCPIP Holding*, 244 F.3d at 99 (finding holder's submissions "quite sketchy" on the issue of fame, where evidence indicated that holder "spent tens of millions of dollars advertising its mark," but did not detail "how many millions, when expended, or how effectively," and holder did not "submit consumer surveys, press accounts, or other evidence of fame" (internal quotation marks omitted)). *Compare Diesel S.p.A. v. Diesel Power Gear, LLC*, No. 19-CV-9308, 2022 WL 956223, at *16 (S.D.N.Y. Mar. 30, 2022) (sufficient evidence of fame where plaintiffs presented evidence that they "generated an average of over $129 million in sales of apparel featuring one or more of the [] marks per year in the United States over the past ten years"; "spent over $4 million on nationwide advertising and promotions of their apparel featuring one or more of [their] marks per year in the United States over the past ten years"; and the marks "have been featured in prominent publications with wide distribution throughout the United States, such as *Details*, *GQ*, *In Style*, *Interview*, *Nylon*, *The New York Times*, *Cosmopolitan*, *W*, *Elle*, and *Esquire*"), *with Heller Inc. v. Design Within Reach, Inc.*, No. 09-CV-1909, 2009 WL 2486054, at *4 (S.D.N.Y. Aug. 14, 2009)

(complaint did not state claim for trademark dilution where "plaintiff [did] not include any information about the [product's] advertising budget or the strength of its consumer recognition in the general population"). In addition, though Plaintiff alleges that its business has been featured on the television show *Man v. Food*, Plaintiff "provides no details about the visibility" of this program "as would support a plausible inference" that its appearance renders it "famous in the eyes of the general public." *Aero AG Holdings, LLC v. Huggoes Fashion LLC*, No. 21-CV-9499, 2022 WL 6244439, at *18 (S.D.N.Y. July 5, 2022). Accordingly, Plaintiff's trademark dilution claim remains insufficiently alleged.

Because Plaintiff has failed to sufficiently allege any valid claim for relief, Plaintiff is not entitled to a default judgment against Defendants. Furthermore, because Plaintiff has already had an opportunity to amend its complaint to cure the defects identified by this Court, the Court dismisses Plaintiff's amended complaint with prejudice for failure to state a claim. *See Abu Dhabi Com. Bank v. Morgan Stanley & Co.*, No. 08-CV-7508, 2009 WL 3346674, at *2 (S.D.N.Y. Oct. 15, 2009) ("[A] dismissal with prejudice is generally appropriate where a court puts a plaintiff on notice of a complaint's deficiencies and the plaintiff fails to correct those deficiencies after amendment.").

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for default judgment (ECF No. 30) is DENIED and the Complaint is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: November 3, 2022
      Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York